**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**WILLIAM PEREZ COSTOSO,**

> **Plaintiff,**

**vs.**                                                    **Case No. 4:17cv157-RH/CAS**

**DR. C. LE, DR. LUIS LOPEZ,
DR. COLOMBANI,
SERGEANT CHOPP,
and CAPTAIN GRIFFIN,**

> **Defendants.**

_____/

## <u>THIRD REPORT AND RECOMMENDATION</u>[1]

After the denial of Defendants' motions to dismiss, *see* ECF No. 72,

the parties were provided an opportunity to conduct discovery.  Near the

conclusion of the discovery period, the pro se Plaintiff filed motions for

summary judgment, *see* ECF Nos. 107, 108, and 112.  Because Plaintiff

referenced exhibits which were not provided, he was given additional time

in which to submit the referenced exhibits, ECF No. 132, and the exhibits to

---

[1] A Report and Recommendation was entered early in this litigation which recommended, among other things, denying Plaintiff's motion for injunctive relief, ECF No. 19.  ECF No. 22.  The recommendation was accepted.  ECF No. 24.  A second Report and Recommendation was entered concerning Defendants motions to dismiss.

support his motion have been filed as document 135. Defendants timely

filed responses to Plaintiff's motions, ECF Nos. 141 and 144.

In addition, Defendant Chopp filed a motion for summary judgment,

ECF No. 136, supported by several exhibits, and Plaintiff filed opposition to

that motion, ECF No. 145. Defendant Chopp filed a reply to Plaintiff's

response. ECF No. 147.

Defendants Lopez and Colombani filed their own motion for summary

judgment, ECF No. 140, supported by two declarations, ECF No. 140-1

and ECF No. 142. Because the second declaration, ECF No. 142, is

identical to the first and also included Plaintiff's medical records, only the

second declaration has been reviewed and referenced in this Report and

Recommendation.

Plaintiff has filed timely responses to both motions. ECF Nos. 145,

148. Plaintiff also filed a motion to supplement his opposition with

additional "belated exhibits." ECF No. 153. That motion has been granted

in a separate Order and the exhibits attached thereto have been

considered.

**Procedural Issues Regarding Two Defendants**

Defendant Griffin was served with process and filed an answer to

Plaintiff's second amended complaint on March 20, 2018, ECF No. 42, and

a notice of appearance of counsel was filed in February 2018.  ECF No. 34.

A second notice of appearance was filed on June 29, 2018.  ECF No. 58.

However, in August 2018, a suggestion of death was filed for Defendant

Griffin.  ECF No. 64.  Plaintiff then filed a motion to substitute a party, ECF

No. 76, which was denied, ECF No. 79,[2] in part because a proper

suggestion of death had not yet been filed.  *Id.*

More recently, Defendant Chopp filed a second Notice of Suggestion

of Death for Defendant Griffin, ECF No. 146, on June 3, 2019.  Plaintiff

then filed another motion to substitute party, ECF No. 150, requesting that

Defendant Griffin's widow be named as a successor Defendant.[3]

An Order was entered on July 9, 2019, which deferred ruling on

Plaintiff's motion, ECF No. 150.  ECF No. 151.  The Order explained that

the basis for Plaintiff's claim against Defendant Griffin was the same as his

---

[2] Plaintiff's objections, ECF No. 80, to that Order were overruled.  ECF No. 86.

[3] On July 10, 2019, a notice was filed advising that a copy of the notice of suggestion of death was "served on what is believed to be Former Defendant Griffin's next of kin." ECF No. 152.  The notice asserts that the 90 period for substitution has begun.  *Id.*

claim against Defendant Chopp, that is - Defendants did not permit Plaintiff to retrieve his "splintcast" on July 19, 2016.  ECF No. 13 at 6.  Because Defendant Chopp's motion for summary judgment, ECF No. 136, was ready for a ruling, Plaintiff's motion to substitute was deferred.  ECF No. 151.  Prior to serving the widow of a deceased correctional officer with a civil rights complaint, the evidence should be reviewed to determine whether or Plaintiff's claim is sufficient to survive summary judgment.  *Id.*

In addition to Plaintiff's claim against Defendant Griffin, Plaintiff's second amended complaint also alleged claims against three doctors: Le, Colombani, and Lopez.  ECF No. 13.  Service of process was never carried out on Defendant Le, despite several efforts made by the Marshals Service.  *See* ECF Nos. 27, 32, 36, 51-52, and 54.  An Order entered on June 4, 2018, advised Plaintiff that because the Defendant's whereabouts were unknown, he should use the tools of discovery to locate Dr. Le.  ECF No. 54 at 3. Approximately one month later, Plaintiff filed a motion requesting that the Marshals Service be required to make another attempt to serve Defendant Le.  ECF No. 59.  That motion was denied without prejudice because Plaintiff had not provided an address for Defendant Le. ECF No. 62.  Plaintiff was advised that after locating Defendant Le, he

must "file a motion requesting that additional service efforts be made on his behalf and he must provide an address or specific location where service could be directed." *Id.* at 2.  Discovery closed on April 18, 2019, *see* ECF No. 139, but nothing further has been filed by Plaintiff concerning Defendant Le.  Therefore, because Defendant has not been served with process, and because Plaintiff appears to have abandoned his claim against that Defendant, it is recommended that Plaintiff's claim against Defendant Le be dismissed.

**Plaintiff's Second Amended Complaint**

Plaintiff alleged that Defendants were deliberately indifferent to his serious medical needs after having "multiple surgeries" on his left arm. ECF No. 13 at 5.  Plaintiff contends that Defendant Colombani "deliberately ignored" a recommendation for physical therapy and Defendant Lopez refused to send Plaintiff "to an outside facility for therapy."  *Id.* at 5-6.  He further claims that Defendants Chopp and Griffin refused to let Plaintiff "retrieve [his] splintcast" for his left arm.  *Id.* at 6.  As relief, Plaintiff seeks one hundred thousand dollars from each Defendant.  *Id.* at 7.

**Standard of Review**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  Summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).  The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 323, 106 S. Ct. at 2553.  The non-moving party must then show[4] though affidavits or other Rule 56 evidence "that there is a

---

[4] "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998) (quoting Celotex, 477 U.S. at 324, 106 S. Ct. at 2553) (quoting Fed. R. Civ. P. 56(c), (e))).  The

genuine issue for trial" or "an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S. Ct. at 2554; Beard v. Banks, 548 U.S. 521, 529, 126 S. Ct. 2572, 2578, 165 L. Ed. 2d 697 (2006).

An issue of fact is "material" if it could affect the outcome of the case. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted). An "issue of fact must be 'genuine'" and the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (other citations omitted). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1243 (11th Cir. 2003) (quotation omitted).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to

---

nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c). Owen, 117 F.3d at 1236; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

determine whether there is a genuine issue for trial." Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202
(1986). "[T]here is no issue for trial unless there is sufficient evidence
favoring the nonmoving party for a jury to return a verdict for that party."
Anderson, 477 U.S. at 249, 106 S. Ct. at 2511 (noting that a "scintilla of
evidence" is not enough to refer the matter to a jury). The Court must
decide "whether the evidence presents a sufficient disagreement to require
submission to a jury or whether it is so one-sided that one party must
prevail as a matter of law." Hickson Corp., 357 F.3d at 1260 (quoting
Anderson v. Liberty Lobby, 477 U.S. 242, 252, 106 S. Ct. 2505, 2505, 91 L.
Ed. 2d 202 (1986)). All "justifiable inferences" must be resolved in the light
most favorable to the nonmoving party, Beard, 548 U.S. at 529, 126 S. Ct.
at 2578 (noting the distinction "between evidence of disputed facts and
disputed matters of professional judgment."), but "only if there is a 'genuine'
dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct.
1769, 167 L.Ed.2d 686 (2007) (quoted in Ricci v. DeStefano, 557 U.S. 557,
586, 129 S. Ct. 2658, 2677, 174 L. Ed. 2d 490 (2009)). "Where the record
taken as a whole could not lead a rational trier of fact to find for the

nonmoving party, there is no 'genuine issue for trial.'"  Matsushita Elec.

Indus. Co., 475 U.S. at 587, 106 S. Ct. at 1356 (other citation omitted).

"Cross motions for summary judgment do not change the standard."

Latin Am. Music Co. v. Archdiocese of San Juan of the Roman Catholic &

Apostolic Church, 499 F.3d 32, 38 (1st Cir. 2007) (quoted in Ernie Haire

Ford, Inc. v. Universal Underwriters Ins. Co., 541 F. Supp. 2d 1295, 1297

(M.D. Fla. 2008).  "'Cross motions for summary judgment are to be treated

separately; the denial of one does not require the grant of another.'"

Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n, 483 F.3d

1025, 1030 (10th Cir. 2007) (quoting Buell Cabinet Co. v. Sudduth, 608

F.2d 431, 433 (10th Cir. 1979)) (quoted in Ernie Haire Ford, Inc., 541 F.

Supp. 2d at 1297-98)).  Because Plaintiff (as the party with the burden of

proof) has a heavier burden on summary judgment, the Court will consider

the Defendant's motion first.  If Defendant's motion is denied, the Court will

consider whether Plaintiff is entitled to judgment as a matter of law.

**Relevant Evidence**

On September 14, 2014, Plaintiff fractured the ulnar bone in his left forearm during an altercation with another inmate.[5]  ECF No. 142 at 4, 10. His arm was placed in a cast.  *Id.*

In late December, a consultation request was submitted for Plaintiff to be evaluated by an Orthopedic specialist for a "non healing" fracture of the ulnar bone.  *Id.* at 10.  The request noted that Plaintiff "was going to have" surgery before being transferred to Wakulla C.I. and the fracture was "not healing."  *Id.*  The request pointed out that the transfer reports supported "planned surgical intervention."  *Id.*  The request was approved on January 2, 2015, by ARNP Kirkland.  *Id.*

X-rays were taken of Plaintiff's arm on January 27, 2015, which revealed the "proximal ulnar fracture [was] unchanged in position."  ECF No. 142 at 11.  Follow up was recommended and Plaintiff was examined by Dr. Gonzalez.  *Id.* at 11-12.  Dr. Gonzalez submitted an "urgent" request for Plaintiff to be evaluated by a trauma specialist.  *Id.* at 12.

---

[5] It appears that the altercation occurred at the Polk County Jail.  ECF No. 142 at 10; *see also* ECF No. 142 at 10; ECF No. 148 at 42.

Plaintiff was taken to Shands Hospital to be evaluated by Dr. Spiegel.

*Id.* at 13.  The medical records reveal Plaintiff had been in a cast for more

than 3 or 4 months.  *Id.*  It was recommended that the cast be removed,

that Plaintiff be referred to physical therapy for range of motion, weight

bearing as tolerated "[WBAT]", a follow-up in 3-4 months, and if pain

persisted, surgery would be discussed.  ECF No. 142 at 5, 13.

Plaintiff returned to the institution and had a "call-out" with ARNP

Kirkland on February 26, 2015, to discuss the orthopedic specialist's

recommendations.  ECF No. 142 at 14.  Plaintiff said he did "not want to go

to RMC" (the Reception and Medical Center) for physical therapy and said

he was dong well.  *Id.*  Plaintiff signed a refusal of treatment/care,

specifically refusing physical therapy.  *Id.*  Plaintiff was given instruction on

exercises he could do on his own to improve arm flexibility.  *Id.* at 14.  He

was also issued a low bunk pass for a year.  *Id.*

On May 22, 2015, additional x-rays were taken of Plaintiff's left arm.

ECF No. 142 at 15.  The findings were "nonunion of a fracture of the

proximal third of the shaft of the left radius with distraction at the fracture

site."  *Id.*  There was also "bowing of the radius and ulnar migration of the

carpal bones producing a Monteggia type deformity."  *Id.*

Plaintiff had a follow-up examination with Dr. Acosta who submitted a "routine" consultation request for Plaintiff to be evaluated by a trauma specialist.  ECF No. 142 at 16.  More x-rays were taken on July 22, 2015, revealing no acute fracture, no dislocation at the wrist or elbow joints, and no "osseous lesion or foreign body."  *Id.* at 17.  The impression was "an old ununited transverse fracture of the proximal one third of the ulna."  *Id.*

Plaintiff had a follow-up examination with Defendant Dr. Colombani on July 27, 2015.  ECF No. 142 at 18.  Dr. Colombani's notes indicate that a recommendation had been made for Plaintiff to have physical therapy, but Plaintiff refused "because he didn't know what he was signing."  ECF No. 142 at 18.  Because Plaintiff continued to have pain in his left forearm, Dr. Colombani requested that Plaintiff's forearm be evaluated by a trauma specialist.  *Id.*

Plaintiff returned to Shands for that evaluation on August 11, 2015.  ECF No. 142 at 19-23.  The physician found no evidence of instability and noted Plaintiff had full range of motion "without pain, crepitation or contracture."  ECF No. 142 at 20; *see also* ECF No. 148 at 43.  The radiographs, however, showed "a persistent proximal ulna diaphysis non-

union" from the fracture sustained nearly a year ago in September 2014.[6]

ECF No. 142 at 20. The treatment plan was for "rest, activity

modifications," and to take nonsteroidal anti-inflammatory drugs as needed

for pain. *Id.* Surgery was also recommended "given the nature of the

nonunion," which would include bone grafting. *Id.* The final notation was

for "follow up in Orthopaedic Hand/Upper Extremity Surgery Clinic on TBD

basis." *Id.* The treatment plan was submitted by David Sollaccio, M.D.,

and includes a checkmark indicating it was reviewed by Dr. Colombani,

Plaintiff's physician at Hamilton C.I. ECF No. 142 at 20.

Dr. Colombani approved the recommendation and Plaintiff had

surgery on October 7, 2015. ECF No. 142 at 6. Plaintiff returned to the

institution and was kept in the infirmary for observation. *Id.* at 24. A week

later, on October 14, 2015, post surgical x-rays were taken which revealed

the fracture was in "anatomic alignment." *Id.* at 25. The radiology report

states that an "[o]verlying fiberglass cast [was] in place." ECF No. 148 at

48. Additionally, alignment of the bones was "excellent." *Id.* Further, the

report stated that the "wrist and elbow articulate normally" and "soft tissue

---

[6] The notes report that Plaintiff said he injured himself on September 18, 2014, when he "fell" in the county jail. ECF No. 142 at 22.

planes [were] normal." *Id.* Plaintiff had a post-surgical consultation follow-up appointment on November 5, 2015, and the medical record reveals the surgical wound had healed. ECF No. 142 at 27.

Plaintiff submitted an affidavit stating that he "had a very successful surgery . . . and a soft temporary cast was placed on" his left arm. ECF No. 148 at 45. Plaintiff states that on November 5, 2015, he met with the surgeon, Dr. David Collaccio, who customized a "splintcast" for his arm. *Id.* Plaintiff said that a post-surgical care plan was drafted in which the doctor "highly recommended therapy to Plaintiff [sic] left arm." *Id.*

Defendants submitted a declaration by Dr. John P. Lay, Jr., M.D., who reviewed Plaintiff's medical records. ECF No. 142. Dr. Lay has generally explained Plaintiff's medical history and interpreted the notes in Plaintiff's medical records. Dr. Lay stated that on May 18, 2016, Plaintiff was evaluated by Dr. Lopez. ECF No. 142 at 7. However, the Court's review of the medical records reveals that Plaintiff was seen by a physician identified as Luis A. Lopez-Rivera, M.D. ECF No. 142 at 29. Because Plaintiff's complaint alleged that he saw "Dr. Luis Lopez" and identified that

person as working at Okaloosa C.I., *see* ECF No. 13 at 2 and 6, it is presumed that Plaintiff and Dr. Lay are referring to the same person.[7]

Dr. Lopez noted Plaintiff had surgery on his left forearm in October 2015.  ECF No. 142 at 29.  The record shows the orthopedic surgeon at Shands had recommended that Plaintiff keep the splint/cast for a year.  *Id.*; *see also* ECF No. 142 at 7.  Dr. Lopez noted that Plaintiff was not wearing the cast at that evaluation.  *Id.*  Plaintiff denied having pain and Dr. Lopez noted that his "forearm was at full range of motion."  ECF No. 142 at 7. The record appears to include a notation that the outside records were not available at that visit.  *Id.* at 29.

Dr. Lopez prescribed a left arm cast for Plaintiff on May 19, 2016, and issued a pass for "restricted activity" for the next month.  *Id.*; *see also* ECF No. 142 at 30.  In addition to advising Plaintiff to do no work with his left arm for a month, Dr. Lopez issued Plaintiff a "low/ bottom bunk" pass for a year as well.  *Id.* at 7, 30.; *see also* ECF No. 1 at 18.

---

[7] An executed summons was filed on January 30, 2018, showing "Dr. Luis Lopez" was personally served with process at Okaloosa Correctional Institution.  ECF No. 28. The motion to dismiss filed by Dr. Lopez did not indicate there was a discrepancy in this Defendant's name, ECF No. 39, nor did his answer, ECF No. 78.

In early June 2016, Plaintiff had a "periodic screening" at Okaloosa C.I.  ECF No. 142 at 31.  Plaintiff reported that his health had been "excellent" since his last evaluation.  *Id.*

On July 19, 2016, Defendant Chopp instructed Plaintiff to step out of his cell because Defendant Griffin wanted to meet with him.  ECF No. 136-2 at 2.  Plaintiff was not wearing a cast on his arm at that time.  *Id.* Defendant Chopp escorted Plaintiff to see Defendant Griffin.  ECF No. 136-3 at 2.  At no time during that escort did Plaintiff say anything about needing a cast.  *Id.*  "It was only when Captain Griffin told Plaintiff that he was going to be placed into confinement that the Plaintiff mentioned anything about a cast."  *Id.*  Defendant Chopp stated that because "Plaintiff had been involved in an inmate knife fight the day before, [he] was especially concerned [about] potential weapons in Plaintiff's cell."  *Id.*[8]

---

[8] Evidence submitted includes an Inspector General's Report which reveals Plaintiff and several other inmates were "allegedly involved in [a] fight with weapons."  ECF No. 136-4 at 12.  All of the inmates "were placed into administrative confinement pending further review of the incident."  *Id.*  The report states that video of the incident showed Plaintiff "utilized a weapon to cut" two other inmates.  *Id.* at 13.  Captain Griffin issued Plaintiff a disciplinary report for aggravated assault on an inmate.  *Id.*  Following a hearing on August 30, 2016, Plaintiff was found guilty of the disciplinary report and penalized "with twenty-six (26) days of disciplinary confinement."  *Id.*  An incident report of Plaintiff's assault on the two other inmates reveals that Plaintiff was seen using a weapon on the dormitory video, but the weapon was "not found."  *Id.* at 15.  The evidence also reveals that by the time staff arrived on scene after the assault, "all of the inmates had retreated back to their cells."  *Id.* at 17, 19-20.

Defendant Chopp acknowledges that because of that concern, he did not "allow Plaintiff to return to his cell after being told he was going to confinement pending an investigation." *Id.* at 2-3. Defendant Chopp further explained that Plaintiff would have a pre-confinement medical check before going to confinement and any medical passes "would have to be re-authorized by medical for confinement." *Id.* at 3.

Plaintiff submitted an affidavit concerning that incident. ECF No. 135 at 12. Plaintiff states that Defendant Chopp approached his "cell door, and when the door was rolled open, Sergeant Chopp told Plaintiff to step out because the Captain wanted to talked [sic] to you." *Id.* "Plaintiff tried to retrieve the splintcast by turning around, that's when Sergeant Chopp, without checking [his] health pass told Plaintiff [to] leave it." *Id.* Plaintiff said that Defendant Chopp told him that it would have to be turned in to the medical department and upon his release from confinement, the cast would be returned to him. *Id.*

On November 15, 2017, Plaintiff was examined by Dr. Espino for complaints of left arm pain. ECF No. 142 at 34. The physician noted Plaintiff's history with the fracture, surgery, and cast removal in February 2015. *Id.* The record indicates that x-rays were to be taken of the left

forearm again and "attempt to consult ortho." *Id.* The x-rays were taken on November 20, 2017, and reveals "intact ORIF ulnar fracture." *Id.* at 35. Plaintiff was taken to "Jax Ortho" for a consultation in December 2017. *Id.* at 36. Additionally, Plaintiff requested a "front handcuff pass" in December and said that having to "cuff up" with his hands behind his back caused "a lot of pain to [his] left arm." ECF No. 148 at 60. A "front cuff only" pass was also issued by Dr. Espino on June 27, 2018, to last until June 27, 2019. ECF No. 153 at 4. That pass was renewed by a different medical provider on or about July 1, 2019, for another year. *Id.*

Plaintiff submitted a grievance that was filed in November of 2017 in which he said that his surgeons at Shands Hospital "highly recommended" that Plaintiff be sent to an outside therapist and he complained that the doctors "failed to do their jobs." ECF No. 148 at 57. The response to his grievance advised Plaintiff to access sick call "to be evaluated by the nurse to see if therapy is needed." *Id.* In another grievance, Plaintiff complained that his arm was deformed and "twisted like a 'chicken wing' just like the surgeon predicted" would happen "if the recommended therapy" was not provided and if Plaintiff did not "keep the cast on [his] left arm." ECF No. 148 at 59.

Plaintiff also submitted a copy of an affidavit submitted by classification officer D. Koel.  ECF No. 148 at 68-69.  Officer Koel states that Plaintiff had requested an application form to see if he qualified for a handicapped approved facility.  *Id.* at 69.  To determine if Plaintiff should receive such an application, Officer Koel reviewed Plaintiff's medical records.  *Id.*  Officer Koel states that the records included a "recommendation from a David Sollocio" in a post-surgery care plan to send Plaintiff Cotoso "to see a therapist."  *Id.*  Officer Koel states that Plaintiff was provided an "A.D.A. application"[9] and that application was approved on May 20, 2019.  *Id.*  Plaintiff is currently "on the list to be transferred to an A.D.A. certified facility."  *Id.*  A copy of the approved request was also submitted.  *Id.* at 71.

Contrary to that affidavit, Dr. Lay's declaration states that he reviewed Plaintiff's medical records and there was no recommendation made for Plaintiff to have "physical therapy anytime after Plaintiff underwent surgery in October of 2015."  ECF No. 142 at 8.  Dr. Lay states

---

[9] Plaintiff requested an accommodation due to his left arm.  ECF No. 148 at 71.  Plaintiff said he needed a "cell with handle bars and a[n] attached lock box to avoid pulling the lockbox with 2 arms, also a cart with wheels" for Plaintiff's property, and to be put "in a bottom floor cell."  ECF No. 148 at 71.

that the notes of Plaintiff's post-operation consultation for November 5, 2015, does not include a recommendation for physical therapy.  *Id.* at 7. Furthermore, Dr. Lay declares that "Dr. Colombani and Dr. Lopez never refused to refer Plaintiff to undergo physical therapy after the surgery." ECF No. 142 at 4.  "In fact, the records show that neither Dr. Lopez or Dr. Colombani ever received any recommendations for the Plaintiff to undergo physical therapy after the surgery, and never deemed physical therapy necessary pursuant to their own knowledge, experience and training."  *Id.*

On January 25, 2018, Plaintiff had nerve conduction testing which was "normal."  ECF No. 142 at 8.  "Dr. Espino reviewed the test results and noted that no further treatment was recommended."  *Id.*  Dr. Lay states that Plaintiff's medical records show "Plaintiff has a full range of motion" and he "does not currently need additional treatment for his left arm."  *Id.*

**Analysis**

The Eighth Amendment governs the conditions under which convicted prisoners are confined and the treatment they receive while in prison.  Farmer v. Brennan, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).  The Eighth Amendment guarantees that prisoners will not

be "deprive[d] ... of the minimal civilized measure of life's necessities."

Rhodes v. Chapman, 452 U.S. 337, 347, 101 S. Ct. 2392, 2399, 69 L. Ed.

2d 59 (1981) (quoted in Chandler v. Crosby, 379 F.3d 1278, 1289 (11th

Cir. 2004)).  "[B]asic human necessities include food, clothing, shelter,

sanitation, medical care, and personal safety."  Harris v. Thigpen, 941 F.2d

1495, 1511 (11th Cir. 1991) (cited in Collins v. Homestead Corr. Inst., 452

F. App'x 848, 850-851 (11th Cir. 2011)).

　　　Deliberate indifference to serious medical needs of prisoners violates

the Eighth Amendment's prohibition against cruel and unusual punishment.

Estelle v. Gamble, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).  "A

serious medical need is 'one that has been diagnosed by a physician as

mandating treatment or one that is so obvious that even a lay person would

easily recognize the necessity for a doctor's attention."  Farrow v. West,

320 F.3d 1235, 1243 (11th Cir. 2003) (quotations omitted) (quoted in

Bingham v. Thomas, 654 F.3d 1171, 1176 (11th Cir. 2011)).  "In either of

these situations, the medical need must be 'one that, if left unattended,

'pos[es] a substantial risk of serious harm.'"  Farrow, 320 F.3d at 1243

(citation omitted); see also Mann v. Taser Intern., Inc., 588 F.3d 1291,

1307 (11th Cir. 2009).  Alternatively, "a serious medical need is determined

by whether a delay in treating the need worsens the condition" or "if left unattended, poses a substantial risk of serious harm." Mann, 588 F.3d at 1307 (citations omitted).  "Severe pain that is not promptly or adequately treated can also constitute a serious medical need depending on the circumstances." Harris v. Prison Health Servs., 706 F. App'x 945, 951 (11th Cir. 2017) (citations omitted).

Deliberate indifference requires more than negligence,[10] but it is unnecessary to show a defendant intended to cause harm. Farmer, 511 U.S. at 835, 114 S. Ct. at 1978, 128 L. Ed. 2d 811 (1994).  Deliberate indifference requires a plaintiff to show that a defendant was subjectively reckless and consciously disregarded a substantial risk of serious harm. Wilson v. Seiter, 501 U.S. 294, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991) (explained in Farmer, 511 U.S. at 838-40, 114 S. Ct. at 1979-80).  "The inadvertent or negligent failure to provide adequate medical care 'cannot be said to constitute 'an unnecessary and wanton infliction of pain.'"

---

[10] "Conduct that is more than mere negligence includes: (1) grossly inadequate care; (2) a decision to take an easier but less efficacious course of treatment; and (3) medical care that is so cursory as to amount to no treatment at all." Bingham, 654 F.3d at 1176 (citing Brown v. Johnson, 387 F.3d 1344, 1451 (11th Cir. 2004)).

Estelle, 429 U.S. at 105-06, 97 S.Ct. 285 (quoted in Farrow, 320 F.3d at 1243, and Harris, 706 F. App'x at 950).

In a claim for the denial of medical care, a plaintiff must show: "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need, and an actual inference of required action from those facts."  Taylor v. Adams, 221 F.3d 1254 (11th Cir. 2000), cert. denied, 531 U.S. 1077 (2001); Farrow, 320 F.3d at 1243. Put another way, to show a defendant acted with deliberate indifference, "a prisoner must show the prison official's: '(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence.'"  Bingham, 654 F.3d at 1176 (quoting Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004) (citing McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999)).

 "However, not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.' " McElligott, 182 F.3d at 1254 (citation omitted) (quoted in Farrow, 320 F.3d at 1243).  For example, medical malpractice does not constitute deliberate indifference.  Estelle, 429 U.S. at 106, 97 S. Ct. at 292.  "Nor does a simple difference in medical opinion between the prison's medical staff and the

inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment." Harris, 941 F.2d at 1505 (citing Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989)). "A 'complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.'" Estelle, 429 U.S. at 106, 97 S.Ct. at 292 (quoted in Bingham, 654 F.3d at 1176). For example, the prisoner in Estelle received treatment for his back injury, but complained that more should have been done in the way of diagnosis. The Court rejected this as a basis for liability:

> But the question whether an X-ray--or additional diagnostic techniques or forms of treatment--is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment.

429 U.S. at 107, 97 S. Ct. at 293. Put simply, an "official acts with deliberate indifference when he or she knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate." McElligott, 182 F.3d at 1255 (citations omitted). "In considering a deliberate indifference claim, '[e]ach individual Defendant must be judged separately and on the basis of what that person knows.'"

Burnette v. Taylor, 533 F.3d 1325, 1331 (11th Cir. 2008) (quoted in Melton v. Abston, 841 F.3d 1207, 1224 (11th Cir. 2016)).

Here, the only claim raised by Plaintiff against Defendant Colombani was that he "ignored" the medical records and "a recommendation of continuing treatment (therapy)" which Plaintiff contends caused his arm to not recover properly "after multiple surgeries."[11]  ECF No. 13 at 5. Similarly, Plaintiff's claim against Defendant Lopez was that he refused to send Plaintiff "to an outside facility for therapy."  *Id.* at 6.  By doing so, Plaintiff states that he interfered with Plaintiff's healing process.

The undisputed evidence in this case shows that physical therapy was recommended for Plaintiff *before* he underwent surgery as a "conservative alternative" to having surgery.  ECF No. 142 at 3.  Plaintiff has not disputed that assertion, nor has Plaintiff disputed Defendants' evidence that Plaintiff declined such therapy.  One medical record indicates Plaintiff declined therapy because he did not want to go to RMC while another indicates Plaintiff declined therapy because he did not know what

---

[11] There is no evidence that Plaintiff had multiple surgeries.  The only evidence provided is that Plaintiff had one surgery on October 7, 2015.

he was singing.  Either way, it remains undisputed that Plaintiff declined to have physical therapy prior to surgery.

After the surgery, there is a dispute as to whether such a recommendation was made.  Plaintiff's affidavit declares that Dr. Sollaccio "highly recommended therapy," and Plaintiff provided a supporting affidavit by his classification officer who said he reviewed the medical records and saw a recommendation by that same doctor to send Plaintiff "to an outside therapist" and continue the splintcast.  On the other hand, Defendants provided the affidavit of Dr. Lay who said he reviewed the medical records and found no recommendation for physical therapy after the surgery.  The medical records provided and reviewed by the Court do not clearly contain a recommendation for physical therapy.

Although Plaintiff's dispute centers on whether Defendants refused to send him for physical therapy as recommended by his surgeon, the ultimate question to be answered in this case is whether Defendants Lopez and Colombani were deliberately indifferent to Plaintiff's serious medical needs.  To do so, Plaintiff must show that he had an objectively serious need and that Defendants had subjective knowledge of a "risk of serious harm" to Plaintiff, that they disregarded that risk, and did so "by conduct

that is more than mere negligence."  Brennan v. Comm'r, Alabama Dep't of

Corr., 626 F. App'x 939, 941 (11th Cir. 2015).

As it concerns Defendant Colombani, the evidence reveals he was

aware that a recommendation had been made for Plaintiff to have physical

therapy which Plaintiff refused.  However, because Plaintiff was still

suffering with pain in his left forearm, Dr. Colombani sent Plaintiff for an

evaluation by a trauma specialist.  Thereafter, it was Dr. Colombani who

recommended Plaintiff for surgery, and it was provided.  There has been

no showing that *after* the surgery, Dr. Colombani was aware of a

recommendation for post-surgical physical therapy.  Plaintiff's own

evidence falls short of revealing that Dr. Colombani had knowledge of

another medical provider's recommendation for physical therapy.  Without

such knowledge, Defendant Colombani cannot be held liable for failing to

recommend or otherwise provide Plaintiff with physical therapy.  That

conclusion is also bolstered by the noting that the result of the surgery was

"excellent" alignment of the bones and full range of motion.  According to

Plaintiff, it was "a very successful surgery."  There is no evidence that

Plaintiff sent grievances or inmate request forms to Defendant Colombani

requesting the physical therapy as allegedly recommended by the surgeon

or advising him that such therapy was needed.  Thus, summary judgment should be granted in favor of Defendant Colombani.

The evidence shows that Plaintiff was located at Hamilton C.I. prior to his surgery.  *See* ECF No. 142 at 18, 19.  Plaintiff was returned to Hamilton after surgery and placed in the infirmary where he was under the supervision of Dr. Colombani.  *Id.* at 24.  By May of 2016, it appears that Plaintiff had been transferred to Okaloosa C.I. and Dr. Lopez became his physician.  *Id.* at 30.  The medical records reveal only one interaction between Plaintiff and Dr. Lopez in mid-May, 2016.  At that evaluation, Dr. Lopez noted that the orthopedic surgeon had recommended that Plaintiff keep the splint/cast for a year, but Dr. Lopez also observed that Plaintiff was not wearing the cast during that evaluation.  *Id.*  Although Dr. Lopez was aware of that recommendation, his notes state that he did not have the "outside records" available to review at that visit. Nevertheless, Dr. Lopez found Plaintiff's "forearm was at full range of motion" and Plaintiff denied having any pain.  ECF No. 142 at 7.  Dr. Lopez renewed Plaintiff's pass to a left arm cast for another year, renewed the restricted activity pass, and the low/bottom bunk pass.  *Id.* at 30.

While recognizing that Plaintiff has submitted an affidavit declaring that Dr. Lopez would not refer Plaintiff to see an outside therapist, there is no indication in this record that Plaintiff had a serious medical need on the one occasion he saw Dr. Lopez in May 2016.  Considering that Plaintiff displayed range of motion and said he was not having pain, there is no evidence to suggest a *need* for physical therapy at that time.  There is also no evidence to show that Plaintiff explained to Dr. Lopez *why* he needed therapy at that time.  The Court has taken into account Plaintiff's submission of grievances in which he complained that he was not given therapy by an "outside doctor."  ECF No. 148 at 56.  However, those grievances were written by Plaintiff while housed at Florida State Prison in November of 2017.  Plaintiff has not shown that he had an obvious need for physical therapy when he was evaluated by Defendant Lopez seven months after his surgery.  Without showing that he had a serious medical need a the time he was examined by Defendant Lopez, Plaintiff cannot show that Defendant Lopez was deliberately indifferent to that need.  Accordingly, summary judgment should be granted in favor of Defendant Lopez.

An additional comment is warranted as it pertains to Plaintiff's own motions for summary judgment against the two physicians. Plaintiff has argued that he is entitled to summary judgment because the Defendants failed to respond to his request for admissions and interrogatories. ECF Nos. 107, 108. Plaintiff contends that by failing to respond, Defendants have admitted the facts he alleged in his complaint and in the discovery requests. *Id.* However, Defendants Lopez and Colombani did not fail to respond. Those Defendants served objections to Plaintiff's discovery requests. ECF No. 111-1. Thus, the basis for Plaintiff's argument is incorrect and does not entitle him to summary judgment.

The remaining claim is against Defendant Chopp for failing to let Plaintiff return to his cell to obtain the cast/splint, which he was not wearing at the time. There is a dispute of fact as to when this encounter occurred. Plaintiff contends he had this conversation with Defendant Chopp immediately upon Defendant Chopp's directing Plaintiff out of his cell to go speak to Captain Griffin. Defendant Chopp contends that it occurred after Griffin told Plaintiff he was going to administrative confinement. The issue of *when* it occurred does not, however, create a genuine dispute such that summary judgment cannot be granted. This factual dispute is immaterial to

the real issue of Plaintiff's claim against Defendant Chopp - was the Defendant deliberately indifferent to a serious medical need of the Plaintiff.

At the time Plaintiff sought to obtain his cast, which Defendant Chopp did not permit, Plaintiff was not wearing it. By not wearing the cast while he was in his cell, Plaintiff demonstrated that the cast was not a medical necessity. Furthermore, this incident occurred in July of 2016, which is ten months after Plaintiff's surgery. Plaintiff provides no evidence to demonstrate that he had an obvious medical need which Defendant Chopp ignored. Without such evidence, Defendant Chopp cannot be held liable for deliberate indifference.

Consequently, the same reasoning applies to Plaintiff's claim against Defendant Griffin. Furthermore, Plaintiff's own affidavit states only that his request was made to Defendant Chopp. Plaintiff has not shown that he had a serious medical need which either Defendant ignored. Additionally, any deprivation of his cast would necessarily be temporary. Plaintiff was advised that he would be able to have the cast back when released from confinement. For all these reasons, Plaintiff's claim against Defendant Griffin should be dismissed and his motion to substitute another person so

as to pursue his claim against Defendant Griffin, ECF No. 150, should be denied.

## Recommendation

In light of the foregoing, it is respectfully **RECOMMENDED** that Plaintiff's motions for summary judgment, ECF Nos. 107, 108, and 112, be **DENIED,** that Defendant Chopp's motion for summary judgment, ECF No. 136, be **GRANTED,** and the motion for summary judgment filed by Defendants Colombani and Lopez, ECF No. 140, be **GRANTED.**  It is also **RECOMMENDED** that Plaintiff's claim against Defendant Le be **DISMISSED** for failure to serve that Defendant, that the claim against Defendant Griffin be **DISMISSED** for failure to state a claim, and that Plaintiff's motion to substitute, ECF No. 150, be **DENIED.**

**IN CHAMBERS** at Tallahassee, Florida, on July 25, 2019.

 S/    Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.</u> If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**